20 315
31 402

[No. 1992.]

## DICK SCHULTZ *v.* THE STATE.

1. THEFT — POSSESSION OF RECENTLY STOLEN PROPERTY.— See the opinion *in extenso* for the substance of facts proved in a theft case as the explanation of the accused of his possession of recently stolen property *held* to be reasonable within the purview of the statute, and of sufficient force to rebut and destroy the inculpatory circumstance of recent possession. Note also proof introduced by the State to disprove the explanatory statements *held* insufficient for that purpose.

2. SAME — CONTINUANCE — NEW TRIAL.— See the statement of the case for evidence disclosed in an application for continuance which, considered in connection with the evidence adduced, entitled the defendant to a new trial, notwithstanding the correctness of the ruling of the trial court in refusing the continuance upon the ground that the application disclosed a total failure of diligence to secure the absent testimony.

3. SAME — VOLUNTARY RETURN OF STOLEN PROPERTY — CHARGE OF THE COURT.— See the statement of the case for evidence *held* to demand of the trial court a charge relating to a voluntary return of stolen property, in conformity with article 738 of the Penal Code.

4. SAME.— REASONABLE DOUBT should be charged in the language of the stat-
ute. Efforts to explain or amplify the doctrine result, ordinarily, in un-
certainty and mischief, and frequently, as in this case, in error. See the
opinion in illustration.

APPEAL from the District Court of De Witt.    Tried below before
the Hon. H. C. Pleasants.

The conviction in this case was for the theft of a horse, the prop-
erty of William Blackwell, in De Witt county, Texas, on the 13th
day of September, 1884.    The penalty assessed was a term of five
years in the penitentiary.

W. A. Blackwell was the first witness for the State.    He testified,
in substance, that sometime in September, 1884, he learned that the
defendant was riding one of his, witness's, horses, in the town of
Cuero, De Witt county, Texas.    Witness started out to find the de-
fendant, encountering Walter Cook, with whom a conversation
ensued.    Witness, from his conference with Cook, went to the de-
fendant's house, where he met a lady whom he took to be the de-
fendant's wife.    That lady told witness that the defendant was down
town.    Witness started back to town, and within fifty yards met
the defendant.    After some little talk witness asked him if he wanted
to sell the horse he was riding.    He replied that he did not, as he
did not own the horse; that he took the horse up for a man named
Denham, who lived in Lavaca county, and who was to pay him ten
or fifteen dollars for taking up the horse for him.    Witness told the
defendant that the horse he was then riding belonged to him, wit-
ness.    Defendant replied that the horse answered the description
furnished him by Denham; that he took the horse up as Denham's,
but, if it in fact belonged to witness, then the witness could take it.
He thereupon got down, unsaddled the animal and delivered it to
the witness.    Witness then asked defendant about another horse,
which at that time was tied in the defendant's lot.    Defendant said
that he drove both of the horses up together as Denham's horses.
Witness told him that that horse was also his, and recovered it.

Cross-examined, the witness stated that the lot in which the second
horse was tied was on the street in plain view of all passers-by.
Witness could discover no manner of effort at concealment.    The
horses described ran on the range near the town of Cuero.    They
were owned by the witness, and were taken without his consent.
The point at which the witness met the defendant was in the town
of Cuero.    One of the horses was grey in color; the other bay.

Walter Cook testified, for the State, that some time in September,

1884, the defendant rode up to Hart's store in Cuero, where the witness was then standing. He was riding a light grey horse. He stopped and treated to beer, when witness remarked that he was riding a good horse. Defendant asked witness what he thought the horse was worth. Witness mounted and rode the horse a short distance, returned and told defendant that the horse was worth sixty-five or seventy dollars. Defendant then said that he had just traded for the horse; that he gave two ponies and the reward he was to get for taking the horse up, in exchange. A few minutes later witness saw Mr. Blackwell and told him that he had just seen the defendant riding a light grey horse.

Cross-examined, the witness stated that Mr. Hart was present at the time of the conversation between witness and the defendant, and others may have been about. No one was with them on the outside of the house when witness rode the horse. The witness was certain that the defendant said that he *had* traded for the horse, and not that he *could* trade for him. Witness had taken one glass of beer but was not drunk. The defendant had the horse in a very public place, where people were continually passing. Defendant made no apparent effort to conceal the horse, and stated distinctly that a part of the price paid for the horse was the reward he was to get for taking him up.

Eph Williams was the next witness for the State. He testified that he was in the employ of Mr. Hoffman in 1884, and frequently drove Hoffman's cattle to the river to water them. On one of these trips witness met the defendant and a man named Baker on the Buchel Flat. Defendant, referring to some animals standing off at some distance, asked witness whose horses they were. One was a grey and the other a bay. Witness, knowing them well, told him that they belonged to Mr. Blackwell. On the next day witness saw the defendant and Baker driving the same horses. On the next day witness saw the defendant riding the grey horse through the streets of Cuero. That was the same day on which Mr. Blackwell recovered the horses from the defendant.

Cross-examined, the witness stated that he was not nearer defendant than two hundred yards when defendant asked him about the ownership of the horses. Witness did not, on the day before this trial, as he was leaving the court-house, tell one Allen Brown that he knew nothing about the case. A man named Taylor, who was with witness when he met Brown, told Brown that he, Taylor, knew nothing about the case, but witness said nothing to Brown about the case. The State closed.

Mrs. Dick Schultz, the wife of the defendant, was his only wit-
ness.  She testified that, a short time before the horse described in
the indictment was taken up by the defendant, a man named Den-
ham came to defendant's house and told defendant that he had lost
some horses, and that he would pay defendant $10 each if he would
recover them.  A man named Hardin and Mr. S. W. Johnson were
present at the time.  Denham gave the brands to defendant in the
presence of witness, Johnson and Hardin, but witness could not
remember the brands.  She remembered, however, that something
was said about a grey horse.  Defendant took up the horses on the
morning of the day they were claimed and taken by Mr. Blackwell.
When he brought the horses home he came through the main streets
of the town of Cuero, and turned the horses into a lot in plain view
of any one looking from the streets.  The witness heard the con-
versation between Blackwell and defendant about the horses.  De-
fendant, after refusing to sell the horse to Blackwell, because he did
not own it, proffered to sell Blackwell a small black pony which he
had owned for some time.

In his application for a continuance, the defendant set out that
he expected to prove by the absent witness Denham that he, Den-
ham, authorized defendant to get up horses which he, Denham,
claimed to have lost; that he furnished defendant a descriptive list,
brands, etc., of the horses so lost, and that among them was a grey
horse answering the description of the Blackwell grey horse.  By
the absent witnesses Johnson and Hardin, he expected to prove that
they were present at the time Denham so authorized the defendant
to take up his horses, and that among the horses was a grey horse
which would fill the description of the Blackwell horse.  By John-
son he expected to prove that he, Johnson, was present at defend-
ant's interview with Walter Cook; that defendant did not tell Cook
that he *had*, but that he *would* trade for the horse, and that the said
Cook was then drunk.

The motion for new trial raised the questions discussed in the
opinion.

*Fly, Davidson & Davidson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge.  When Blackwell, the owner of the alleged stolen
horses, challenged the defendant's right to them, defendant ex-
plained his possession of them by saying that he had been author-

ized by one Denham to take up horses of the description of these, and that he had taken up these horses believing them to be Denham's; that Denham lived in Lavaca county, and claimed to have lost horses in that neighborhood suiting the description of Blackwell's horses, and promised to pay defendant for getting them up. This was defendant's explanation of his possession of the horses, made ·within a few hours after he had taken them up, and when he was first called upon to explain his possession.

In addition to this explanation he proved by his wife that Denham had employed defendant to get up horses similar in description to these. It was also shown by the evidence that he got up the horses ·in daylight and drove them through the streets of Cuero to his pen situated in said town, and after penning them caught and rode one of them to a public house in said town, and there called upon the State's witness Cook to examine the horse, and give his opinion as to the value thereof. He made no effort whatever to conceal his possession of the horses, and when Blackwell, the owner, claimed them, he at once turned them over to him.

In view of this evidence we think it devolved upon the State, relying as it did upon the defendant's recent possession of the property to establish his guilt of its theft, to prove the falsity of his explanation of such possession. His explanation is, we think, a reasonable one, and sufficient to rebut and destroy the inculpatory circumstance of recent possession. We are further of the opinion that the State failed to show the improbability or falsity of such explanation. It is true that an effort was made in this direction, by the production of evidence tending to show that at the time the defendant took the horses he knew them to be the property of Blackwell, and that he stated to a witness that he had traded for one of the horses. When this evidence is closely scrutinized it will be found to be too uncertain and indefinite to be relied upon to establish guilt, and it does not, in our opinion, disprove or render unreasonable or improbable the explanation made by the defendant.

Considering, in connection with the evidence adduced on the trial, the fact that the defendant applied for a continuance of the cause for the want of the testimony of Denham, and that of two other witnesses who were proved to have been present when Denham described the horses to defendant, and employed him to get them up, we are of the opinion that the court should have granted the defendant's motion for a new trial, notwithstanding the court did not err in refusing the application for a continuance upon the ground that sufficient diligence to obtain the testimony of the ab-

sent witnesses had not been used. (*Stanley* v. *The State*, 16 Texas Ct. App., 392.) It is shown from the evidence adduced on the trial that the testimony of the absent witnesses is not only material but that it is probably true.

We are of the opinion that the evidence demanded a charge from the court of the law relating to a voluntary return of stolen property. No such charge was given. (Penal Code, art. 738; *Bird* v. *The State*, 16 Texas Ct. App., 528.)

The charge upon the reasonable doubt should follow the statute (Code Crim. Proc., art. 727), without any attempt at amplification or explanation, and efforts to elucidate the meaning of the statute are unnecessary and mischievous. (*Bland* v. *The State*, 4 Texas Ct. App., 15; *Fury* v. *The State*, 8 Texas Ct. App., 471.) In this case the learned judge, after charging the law of reasonable doubt substantially in the language of the statute, proceeded to explain that moral certainty of guilt was the certainty required to produce conviction, and then defined the meaning of moral certainty. This was unnecessary and erroneous.

For the reasons and because of the errors we have mentioned, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered February 17, 1886.]